# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **FREDERICK DICKERSON,** | : | Case No. 03:12 CV 1596 |
| Petitioner, | : | |
| vs. | : | |
| **ED SHELDON, WARDEN,** | : | **MAGISTRATE'S REPORT AND** |
| | : | **RECOMMENDATION** |
| Respondent. | | |

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ and Petitioner's Traverse to Return of Writ (Docket Nos. 1, 12, & 16).  For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, the determination of factual issues made by a

State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).
This statutory presumption of correctness extends to factual findings made by state appellate
courts on the basis of their review of trial court records.  *Hardaway v. Withrow,* 305 F.3d 558,
563 (6th Cir. 2002) *cert. denied*, 123 S.Ct. 2078 (2003) (*citing Brumley v. Wingard*, 269 F.3d
629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).  The applicant
shall have the burden of rebutting the presumption of correctness by clear and convincing
evidence.  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).

In the instant case, the Court of Appeals for Lucas County, Ohio, made the following
findings of fact:

> From 1978 until she ended the relationship in March 1985, Petitioner and Ms.
> Denise Howard lived with each other.  They had two boys.  After Ms. Howard
> left Petitioner, she and the boys lived with Mr. Kevin McCoy in the second story
> of a duplex located at 1552½ Pinewood.  The second story apartment was Ms.
> Davida McClain's, and she lived there with her children, Tony, Donya, and Nicole
> a/k/a Sue.
>
> On May 26, 1985, at approximately 2:30 p.m., Ms. Howard was sitting in Mr.
> McCoy's van which was parked in front of the duplex.  Mr. McCoy was working
> in the back of the duplex, and Ms. Howard was waiting for him.  Petitioner
> walked up to the van and asked Ms. Howard to get out and talk with him.  She did
> as he asked, and they walked up the street with each other.  Apparently, Mr.
> McCoy was present at the spot where the van was parked when Ms. Howard and
> Petitioner walked away.
>
> Petitioner asked Ms. Howard about Mr. McCoy.  Petitioner wanted Ms. Howard
> to kiss him and asked her if she wanted Mr. McCoy to see her kiss him.  Ms.
> Howard did not want to kiss Petitioner and told him so.  Petitioner then hit her
> and choked her down to the ground, and said to her, "'I know you'll never come
> back now'."  Petitioner took Ms. Howard to his car; he drove around the block
> and then back to the duplex so that he could visit his boys.
>
> When Petitioner and Ms. Howard returned to the duplex, Petitioner and Mr.
> McCoy spoke briefly to each other.  Petitioner did little more than ask Mr.
> McCoy what his name was.  Mr. McCoy was sitting in his van at this time.  Also
> at this time an off-duty patrolman in the Toledo Police Department, Mr. Curtis
> Jewell, approached Petitioner and offered to help settle the dispute that was
> brewing between Petitioner and Ms. Howard.  Officer Jewell, who was visiting

2

his parents on Pinewood, had observed Petitioner grabbing Ms. Howard's arm and pulling at her.  Petitioner told Officer Jewell to mind his own business.  Once Petitioner and Ms. Howard went into the apartment, Officer Jewell asked his father to call the police.  The police arrived at approximately the moment that Petitioner, Ms. Howard, and the two boys reached the front porch.  The police arrested Petitioner on the charge of disorderly conduct.

After the police had taken Petitioner away, Ms. Howard, her boys, and Mr. McCoy left.  They returned to the duplex at 2:30 a.m., on May 27, 1985.  Ms. Howard realized that Petitioner had been back because she saw a note that he had placed on her car.  Petitioner had been released on a cash bond earlier.  Ms. Howard then spotted Petitioner.  While Petitioner and Mr. McCoy spoke to each other Ms. Howard called the police.  When the police arrived, Petitioner was not to be seen.  The time was 3:30 a.m.  About a half-hour later, at 4:00 a.m., Ms. Howard and Mr. McCoy heard the sound of Petitioner walking outside and called the police.  The police responded, but could not find Petitioner.  This sequence was repeated for a third time at 5:00 a.m.  After the police left, Ms. Howard and Mr. McCoy laid down in bed and, as Ms. Howard put it, listened for Petitioner.  Mr. McCoy fell asleep, but Ms. Howard stayed awake.

At shortly before 6:00 a.m., Ms. Howard heard Petitioner raise the window in the bathroom.  She woke up Mr. McCoy, who then got up, picked up a chair, and went into the bathroom.  Ms. Howard saw the window shade being raised, and then saw Mr. McCoy rush toward the window with the chair; Ms. Howard went through the front door on the second-story landing and ran down the stairway to go to a neighbor's house to call the police.  She heard Mr. McCoy crash the chair through the window and then heard a gunshot.

Petitioner had come to the bathroom window armed with an H & R .22 caliber revolver.  The shot that Ms. Howard heard as she went down the stairway struck Mr. McCoy in his left upper chest, passed through his left lung, and exited from his body on the left side of his back.  This shot was fired from a distance of two to three feet.  Petitioner entered the bathroom and then went to the hallway at the top of the stairway, where he placed the barrel of the gun on the top back side of Mr. McCoy's head and fired a shot through Mr. McCoy's brain.  Petitioner proceeded to the room where Donya and Nicole McClain were sleeping.  Donya had been awakened by the shots, and listened as Petitioner asked Nicole where Ms. Howard was.  Apparently, Nicole did not answer.  Petitioner counted to three and then shot her two times on the left side of the face.

The police arrived at the duplex in response to Ms. Howard's telephone call and met Petitioner as he came down the back stairway.  The police took the gun from his right pocket and arrested him.  Petitioner was handcuffed and put into a police car.  When the police officers entered the apartment, Mr. McCoy was dead.  Nicole was still alive.  Nicole, however, died two hours later.

3

*State of Ohio v. Dickerson*, 1988 WL 13216, *1 - *2  (1988) (unreported).

### III. PROCEDURAL BACKGROUND.

**A.    INDICTMENT**

During the May 1985 term, the Lucas County Grand Jury returned the following indictment against Petitioner:

> COUNT ONE:    Aggravated murder of Kevin McCoy, a violation of OHIO REV. CODE §§ 2903.01(B) with three specifications:
>
> > (a)    said offense was committed as part of a course of conduct by Petitioner involving the purposeful killing of or attempt to kill, two or more persons (mass murder);
> >
> > (b)    said offense was committed while Petitioner committed or was attempting to commit, aggravated burglary (felony murder); and
> >
> > (c)    Petitioner had a firearm on or about his person or under his control during the commission of the offense, a violation of OHIO REV. CODE § 2929.71 (firearm).
>
> COUNT TWO:    Aggravated murder of Nicole McClain, a violation of OHIO REV. CODE § 2903.01(B) with three specifications:
>
> > (a)    said offense was committed as part of a course of conduct by Petitioner involving the purposeful killing of or attempt to kill, two or more persons (mass murder);
> >
> > (b)    said offense was committed while Petitioner committed or was attempting to commit, aggravated burglary (felony murder); and
> >
> > (c)    Petitioner had a firearm on or about his person or under his control during the commission of the offense, a violation of OHIO REV. CODE § 2929.71 (firearm) (Docket No. 12-1, pp. 3-5 of 246).

**B.    ARREST AND CONVICTION.**

Arrested on June 3, 1985, Petitioner waived his right to a trial by jury and instead elected to be tried by a three-judge panel consisting of Richard W. Knepper, George M. Glasser and Charles J. Doneghy (the panel).  After a full and complete trial, the panel rendered a unanimous verdict and judgment as to Counts one and two:

> 1.    Petitioner was guilty of the aggravated murders of Kevin McCoy and Nicole McClain;

2.    The offense of aggravated murder was committed as part of a course of conduct;

3.    The offense of aggravated murder was committed while Petitioner was committing or attempting to commit aggravated burglary;

4.    Petitioner was the principal offender in the commission of the aggravated murder; and Petitioner had on or about his person or under his control, a firearm while committing said offense.

(Docket No. 12-1, pp. 6-7; 8-10 of 246).

C.    THE SENTENCE

On November 7, 1985, the panel entered the following order after hearing mitigation,

arguments of counsel, Petitioner's statement to the court and other testimony:

1.    Petitioner was committed to the Ohio Department of Rehabilitation and Corrections for a period of three years as to the firearm specifications, to be served consecutively to each other and consecutive to the sentences imposed on the charges herein.

2.    Petitioner was sentenced to death in the electric chair on the two charges of aggravated murder.  Petitioner's scheduled date of execution was March 8, 1986. The sentences imposed in counts one and two were ordered to be served consecutively and consecutively with the firearm specification convictions (Docket No. 12-1, pp. 11-12 of 246).

D.    DIRECT APPEAL.

Petitioner timely appealed his convictions and on February 12, 1988, the court of appeals

rendered a decision affirming the conviction and addressing the merits of ten assignments of

error.

1.    In his first and second assignments of error, Petitioner questioned the constitutionality of OHIO REV. CODE § 2929.03(D)(3).  It was Petitioner's contention that this statute was void for vagueness and therefore Petitioner could not be sentenced pursuant to this statute.

The court of appeals found that the constitutional rights that Petitioner sought to

vindicate were apparent at the time he entered a plea and at the time he was sentenced.

5

Petitioner's attempt to raise this issue for the first time on appeal was disruptive to the state's interest. The court of appeals considered that Petitioner had waived his right to challenge the constitutionality of OHIO REV. CODE § 2929.03(D)(3). *State v. Dickerson, supra*, at *3.

    2.    In the <u>third assignment of error</u>, Petitioner argued that his waiver of a jury trial was not made knowingly, intelligently or voluntarily. The essence of this argument is that the panel asked his attorney whether there were objections to the composition of the panel. It was prejudicial error that Petitioner was not consulted for direction on this matter.

The court of appeals reviewed the record and determined that Petitioner demonstrated no reservation or hesitancy or equivocation whatsoever on the subject of whether he wished to stand by his waiver of trial by jury. *Id*. at *4.

    3.    In the <u>fourth assignment of error</u>, Petitioner argues that the indictment was defective because it failed to advise him of the elements of the offense of aggravated burglary and the accompanying specifications. He was denied sufficient information as to the charges against him and this denial affected his ability to prepare a defense.

The court of appeals found that the indictment (a) charged Petitioner with the commission of an offense within the meaning of OHIO REV. CODE § 2941.05; (b) satisfied OHIO REV. CODE § 2941.14(C) as to form of specifications; and (c) contained all of the essential elements of the offense of aggravated murder and the death penalty specification under OHIO REV. CODE § 2929.04(A)(7). *Id*. at *5.

    4.    Petitioner's <u>fifth assignment of error</u> raised issues peculiar to the appellate court's duty as a court of appeals. Specifically, Petitioner requested that the court of appeals conduct a *de novo* review of the evidence offered in mitigation and to weigh the evidence against the aggravating circumstances. Petitioner was of the opinion that such consideration would compel the court to find that the aggravating factors did not outweigh the mitigating factors and thus the appellate court was required to vacate the sentence of death and remand the case for re-

6

sentencing.

The court of appeals found that (1) Petitioner did establish OHIO REV. CODE § 2929.04(B)(2) as a mitigating factor; (2) Petitioner's inability to cope and go on with his life as well as his attempt to commit suicide were largely cumulative with the evidence that was examined under the mitigating factors in OHIO REV. CODE § 2929.04(B)(3); (3) Petitioner was unable to establish OHIO REV. CODE § 2929.04(B)(7) as a mitigating factor; and (4) Petitioner's mental illness did not mitigate against the imposition of the death penalty and under the circumstances, the court held that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt.  *Id.* at *14.

5.      Petitioner argued in his <u>sixth assignment of error</u> that the trial court's assessment of evidence in mitigation and weighing of aggravating and mitigating evidence as reflected in its sentencing opinion violated state and federal law.

The court of appeals found that Petitioner's argument failed to implicate due process of law considerations.  When the panel stated that it had found Petitioner guilty of the specifications charging aggravating circumstances in the first paragraph of its November 15 sentencing opinion, Petitioner had notice of which particular aggravating circumstances the panel had found him guilty of committing.  Petitioner had not been prejudiced by this defect.  *Id.* at *8.

6.      In the <u>seventh assignment of error</u>, Petitioner suggested that the sentence of death was not an appropriate sentence and that it was excessive or disproportionate to the penalty imposed in similar cases.

The court of appeals compared Petitioner's case to *State v. Clark*, Lucas App. No. L-84-

7

443 (1986) (unreported), wherein the court affirmed the death penalty imposed for the commission of a senseless, execution style killing.  Similarly, the court of appeals affirmed the imposition of the death penalty upon a defendant who was mildly mentally retarded.  *State v. Rogers*, 28 Ohio St. 3d 427 (1986) *sua sponte* reversed and remanded for a new trial on other grounds, 32 Ohio St. 70 (1987).  The imposition of the death penalty is not excessive, especially when viewed in light of the fact that Petitioner shot both victims a second time in an area of the body that assured death.  The death sentence was the appropriate sentence in this case.  *Id.* at *14.

> 7.   Petitioner argued in the <u>eighth assignment of error</u> that the trial court erred in admitting into evidence the reports of Dr. Gottlieb and Dr. Sherman as to Petitioner's sanity and as a result, Petitioner was clearly prejudiced.

The court of appeals found that the reports from Drs. Gottlieb and Sherman that Petitioner was sane, made the existence of the mitigating factor of diminished capacity more probable or less probable than without the reports.  The panel did not abuse its discretion by admitting the reports into evidence.  *Id.* at *9.

> 8.   Petitioner argued in the <u>ninth assignment of error</u> that there was insufficient evidence to support the trial court's judgment finding Petitioner guilty of the aggravated murder of Kevin Mc Coy.  There was no evidence that Mr. McCoy was alive when the second shot was fired and there was no evidence that the first shot was fatal.  Moreover, there is no evidence that he intended to cause Mr. McCoy's death.

The court of appeals examined the forensic pathologist testimony and determined that the first shot in and of itself was sufficient to cause Mr. McCoy's death and that the barrel of the gun was in contact with Mr. McCoy's head, showing that Petitioner had the specific intent to kill Mr.

8

McCoy, regardless of whether he was alive at the time he fired the second shot.  *Id.* at *10.

9.     In his <u>tenth assignment of error</u>, Petitioner suggested that the combination of errors and omissions by Petitioner's trial counsel were so serious and so removed from the trial tactics and strategy as to seriously prejudice Petitioner's substantive rights and to deprive him of the effective assistance of counsel[1].

After examining each of the six alleged errors in terms of whether they demonstrated a deficient performance, the appellate court found that Petitioner had failed to sustain his burden of demonstrating that any of these alleged errors and omissions called into the question whether his attorney functioned as "counsel" within the meaning of the Sixth Amendment.  *Id*. at *11.

**D.     APPEAL TO THE SUPREME COURT OF OHIO.**

On September 6, 1989, the Supreme Court of Ohio, affirmed the conviction and sentence of death, making the following findings:

1.     There was no merit to any of the specific propositions of law raised by Petitioner concerning his trial and/or appeal to the court of appeals that would compel a reversal of his convictions of the crimes described.

2.     The aggravating circumstances outweighed the mitigating factors presented by Petitioner, beyond a reasonable doubt.

3.     The sentence of death was appropriate in this case, since it is neither excessive nor disproportionate to the penalty imposed in similar cases.

---

[1]

Petitioner alleged six bases for his ineffective assistance of counsel claim.  Trial counsel did (**1**) not inform Petitioner that he was subjecting himself to an increased risk of being sentenced to death by waiving his right to trial by jury; (**2**) fail to pursue an on-the-record inquiry on the matter of the continued participation of the judge who had previously convicted Petitioner of receiving stolen property, or by failing to outright object to that judge's continued participation; (**3**) fail to file a bill of particulars to the indictment; (**4**)(**a**) fail to explain to the panel the difference between insanity and diminished capacity at the conclusion of the sentencing hearing and (**b**) fail to request a mental examination of Petitioner as provided by OHIO REV. CODE § 2929.03(D)(1); (**5**) failing to argue to the panel that it could consider as aggravating circumstances only those circumstances set forth in OHIO REV. CODE §§ 2929.04(A)(1)-(8); and (**6**)(**a**) fail to file a motion to suppress the statements allegedly made by appellant to Detective Robert Poiry, (**b**) fail to thoroughly question Ms. Howard on her testimony that she saw Petitioner's hand raising the shade of the bathroom window, and (**c**) fail to cross-examine Ms. Donya McClain.

*State of Ohio v. Dickerson*, 45 Ohio St. 3d 206, 543 N. E.2d 1250 (1989).

E.  **THE PETITION FOR *CERTIORARI*.**

Petitioner requested review of this decision in the United States Supreme Court.  On April 19, 1990, the Court denied Petitioner's petition for writ of *certiorari*.  *Dickerson v. State of Ohio,* 110 S.Ct. 1836 (1990).

F.  **REQUESTS FOR POST-CONVICTION RELIEF.**

On November 21, 1990, Petitioner filed a petition for post-conviction relief pursuant to OHIO REV. CODE § 2953.21.  The State filed a motion for summary judgment on June 21, 1991 and an oral hearing was conducted.  The motion for summary judgment was granted and the petition for post conviction relief was dismissed[2].  *State v. Dickerson*, 2000 WL 28320, *1 (2000).

Petitioner requested review of the appellate court's affirmance of the trial court's denial of post-conviction relief in the Supreme Court of Ohio.  The Court found that Petitioner had presented neither a substantial constitutional issue that it had not already decided nor an issue of public or great general interest.  *State of Ohio v. Dickerson*, 2000 WL 34333844, *31 (2000).  The motion for reconsideration was denied on June 14, 2000.  *State v. Dickerson*, 89 Ohio St. 3d 1431, 729 N. E.2d 1200 (2000) (Table).

A consolidated appeal was filed in the court of appeals from the judgment of the Lucas

---

2

This matter was assigned to the judge who presided over the three-judge panel.  However, the judge voluntarily recused himself upon motion by Petitioner.  The case was assigned to a second judge who dismissed the judge's petition on July 26, 1991.  Petitioner appealed that judgment and  the court reversed and remanded the case.  The court of appeals found that the trial court should have recused himself from the post-conviction action because the judge had been the division chief of the criminal division at the prosecutor's office at the time of Petitioner's trial.  *State v. Dickerson*, 2000 WL 28430, at *1, fn.1.

County Common Pleas Court, from orders (1) dismissing Petitioner's petition for post-conviction relief and (2) denying Petitioner's motion for relief from judgment. *State of Ohio v. Dickerson*, 1993 WL 195806, *1 (1993) (unreported). The court of appeals reversed and remanded the case because of the due process ramifications and the possible merit of Petitioner's claims. The trial court was instructed that upon remand, further proceedings regarding the allegation that the trial court erred by failing to disqualify or recuse itself from Petitioner's post-conviction action were to be conducted. *Id.*

Following affirmance on direct appeal of his state court aggravated murder convictions and death penalty sentence, Petitioner requested federal habeas relief. United States District Court Judge David A. Katz found that none of Petitioner's claim asserted in the petition for writ of habeas corpus were well-taken. The petition was dismissed. *Dickerson v. Mitchell*, 336 F. Supp. 2d 770, 823 (N.D.Ohio 2004).

On appeal to the Sixth Circuit Court of Appeals, the district court decision was reversed and remanded with instructions to issue the writ of habeas corpus vacating Petitioner's death sentence unless the State conducted a new penalty phase proceeding within 180 days of remand. *Dickerson v. Bagley*, 453 F. 3d 690, 699 (6th Cir. 2006). The Court found that although Petitioner's waiver of his right to a jury trial was made knowingly, voluntarily and intelligently, defense counsel was ineffective in offering mitigation factors during the penalty phase of the trial. *Id.* at 690.

On remand, Petitioner was appointed a mitigation specialist and defense counsel. The mandated penalty phase was conducted in the Lucas County Court of Common Pleas on August 11 and 12, 2008, before a three-judge panel. The panel vacated the order of death previously

11

imposed and sentenced Petitioner to life in prison with the possibility of parole after 30 years for each count of aggravated murder, to be served consecutively to each other and to the sentences previously imposed for the two firearm specifications.  Petitioner was given credit for the time served.  *State v. Dickerson*, 2011 WL 3568277 (2011); Docket No. 12-1, pp. 55-56 of 246).

Petitioner appealed the two life sentences for the reasons that:

1.  The trial court erred in considering not just the aggravating circumstances but also evidence of the nature and circumstances of the offense; and

2.  The trial court's imposition of maximum and consecutive sentences failed to reflect balancing the seriousness and recidivism factors of OHIO REV. CODE § 2929.12 or the principles of felony sentencing and was, therefore, contrary to law (Docket No. 12-1, p. 38 of 246).

The court of appeals affirmed the conviction (Docket No. 12-1, pp. 81-93 of 246).

In the memorandum in support of jurisdiction filed in the Supreme Court of Ohio, Petitioner asserted the following reasons why his case was of great public interest and involved a substantial constitutional question:

1.  This case involved the "mala fides" of the prosecutor's improperly interjected non-statutory, aggravating circumstances into the sentencing determination hearing;

2.  The trial court erred in considering not just the aggravating circumstances but also evidence of the nature and the circumstances of the offense; and

3.  The trial court's imposition of maximum and consecutive sentences failed to reflect balancing of the seriousness and recidivism factors of OHIO REV. CODE § 2929.12 or the principles of felony sentencing and was, therefore, contrary to law (Docket No. 12-1, pp., 98-103 of 246).

Upon consideration of the jurisdictional memoranda, the Supreme Court of Ohio, denied Petitioner leave to appeal and dismissed the appeal as not having any substantial constitutional question on November 30, 2011.  *State v. Dickerson*, 131 Ohio St. 3d 1512, 965 N.E.2d 312

(2012) (Table).

On November 14, 2011, Petitioner filed an application to reopen the appeal pursuant to OHIO APP. R. 26(B)[3] in the court of appeals.  Petitioner argued that he was denied the effective assistance of appellate counsel who failed to raise on appeal that the trial court:

1.  Erred in imposing multiple sentences of the gun specification which derived from the same act or transaction, a violation of the Fifth Amendment right against double jeopardy;

2.  Erred as a matter of law in sentencing Petitioner pursuant to Senate Bill No. 2; and

3.  Abused its discretion by failing to consider the sentencing factors as required by OHIO REV. CODE § 2929.12, prior to imposing a sentence (Docket No. 12, pp. 121-127 of 246).

On December 27, 2011, Petitioner filed an application for reconsideration in which he asked that the court excuse any defect in his pleadings or deficiencies in filing his pleadings.  It was through no fault of his own that his pleadings were not timely filed as the penal institution had difficulty complying with its affirmative obligations to assure meaningful access to the courts (Docket No. 12-1, pp. 144-148 of 246).

The court of appeals rendered a decision on January 24, 2012, denying the application and supplemental application for the reasons that:

1.  The application was untimely filed.

2.  Petitioner failed to satisfy the procedural requirements of OHIO APP. R. 26(B).

3.  Petitioner failed to demonstrate a genuine issue as to whether he was deprived of the effective assistance of appellate counsel (Docket No. 12-1, pp. 149-165 of 246).

---

[3]

Under OHIO APP. R. 26(B), a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.

Petitioner filed a notice of appeal in the Supreme Court of Ohio on February 18, 2012 (Docket No. 12-1, pp. 166-167 of 246).  In his memorandum in support of jurisdiction, he asserted three propositions of law:

1.  He was denied the effective assistance of appellate counsel when counsel failed to raise that the trial counsel erred in imposing multiple sentences for the gun specifications deriving from the same act or transaction;

2.  The trial court erred as a matter of law in sentencing Petitioner pursuant to Senate Bill No. 2; and

3.  The trial court abused its discretion by failing to consider the sentencing factors as required by OHIO REV. CODE § 2929.12, prior to imposing a sentence (Docket No. 12, p. 169 of 246).

On April 18, 2012, the Supreme Court of Ohio dismissed the appeal as not having any substantial constitutional question (Docket No. 12-1, p. 198 of 246).

F.  PETITION UNDER 28 U. S. C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY.

Petitioner filed the subject Petition for Writ of Habeas Corpus in this Court on June 21, 2012.  He asserted seven grounds for relief:

1.  The trial court erred in considering not just the aggravating circumstances but also evidence of the nature and the circumstances of the offense.

    *Supporting Facts*:

    During the new penalty phase, the State improperly introduced to the court non-statutory aggravating circumstances along with the nature and circumstances of the offense.  The trial court's entertainment of this evidence is an abuse of discretion.

2.  The trial court's imposition of maximum and consecutive sentences failed to reflect balancing of the seriousness and recidivism factors of OHIO REV. CODE § 2929.12 or the principles of felony sentencing.

    *Supporting Facts.*

    The sentencing statute provides life imprisonment with parole after 20 years or life imprisonment with parole after 30 years.  The Court's sentence of two life

14

imprisonments with parole after 30 years failed to consider Petitioner's chronic medical condition, likelihood of recidivism, or the peaceful adjustment to prison life as relevant aspects of his character, having already served 27 years in prison.

3.      Appellate counsel was ineffective for failing to assert that the trial court erred in imposing multiple gun specifications derived from the same act or transaction.

*Supporting Facts*:

Petitioner was charged, convicted and sentenced to three consecutive years for two gun specifications derived from one act or transaction of burglary during which he was in possession of one weapon.

4.      The trial court erred as a matter of law in sentencing Petitioner pursuant to Senate Bill No. 2, as amended by Senate Bill No. 269.

*Supporting Facts:*

On August 14, 2008, Petitioner was sentenced improperly under Senate Bill No. 2 as opposed to the sentencing guidelines in the OHIO REVISED CODE prior to July 1, 1996.

5.      The trial court abused its discretion by failing to consider the sentencing factors as required by OHIO REV. CODE § 2929.12, prior to imposing a sentence.

*Supporting Facts:*

During Petitioner's penalty/sentencing held on August 12, 2008, the trial court failed to consider the mitigating minimum term of imprisonment factors of OHIO REV. CODE § 2929.12(C)(1) - (7) or (D) of the sentencing guidelines of offenses committed prior to July 1, 1996.

## G.      RESPONDENT'S RETURN.

Respondent seeks dismissal of Petitioner's Petition for the reasons that (1) Petitioner's first, second and fifth claims present non-cognizable and meritless challenges to a non-capital state sentencing decision and (2) Petitioner's third and fourth ground have been defaulted as a result of Petitioner's failure to fairly present them to the Ohio courts.

## V. PROCEDURAL BARRIERS TO REVIEW.

Before the undersigned Magistrate can review the merits of the Petition for Writ, a

15

determination must be made as to whether Petitioner has overcome several procedural barriers. Procedural barriers such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, may operate to limit access to review on the merits of Petitioner's constitutional claims.  *See Daniels v. United States*, 121 S. Ct. 1578, 1582-1583 (2001).

A.    THE STATUTE OF LIMITATIONS STANDARD OF REVIEW AND ANALYSIS.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT of 1996 (AEDPA), there is a one year statute of limitations that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court.  *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)).  This statute of limitations begins to run from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

Direct review for purposes of Section 2244(d)(1)(A) encompasses review by the United States Supreme Court.  *Lawrence v. Florida*, 127 S.Ct. 1029, 1082-1083 (2007).  The petitioner has 90 days to file a writ of *certiorari* to the United States Supreme Court.  *Id.* at 1083.

AEDPA's one year limitation's period is not a jurisdictional bar and is subject to equitable tolling in certain instances.  *Ata v. Scutt,* 662 F.3d 736, 741 (6thCir.2011) (*See Holland*

16

*v. Florida*, 130 S.Ct. 2549, 2560 (2010)).  A petitioner is entitled to equitable tolling only if he or she shows:

1.     The diligent pursuit of his or her rights and
2.     That some extraordinary circumstance stood in his or her way, thereby preventing the timely filing.

*Id.* (*citing Holland*, 130 S.Ct. at 2562; *quoting Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814-1815 (2005); *see also Robertson v. Simpson*, 624 F.3d 781, 783–784 (6th Cir.2010) (*quoting Holland*, 130 S.Ct. at 2560–62)).  Equitable tolling should be applied "sparingly."  *Id.* (*citing Solomon v. United States*, 467 F.3d 928, 933 (6thCir.2006).  The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling.  *Id.* (*citing Griffin v. Rogers*, 308 F.3d 647, 653 (6thCir.2002)).

Because Petitioner's claims do not implicate Sections 2244(d)(1)(B), (C) or (D), the statute of limitations is calculated from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  Here, the statute of limitations began to run on April 18, 2012, the date on which the Supreme Court of Ohio dismissed the appeal emanating from the application to reopen/application for reconsideration.  Petitioner properly filed the Petition for Writ of Habeas Corpus on June 21, 2012.  Clearly the expiration of the statute of limitations is not an impediment to habeas review of Petitioner's claims.

**B.     PROCEDURAL DEFAULT STANDARD OF REVIEW.**

Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition.  *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir.2013) (*See Lambrix v. Singletary*, 117 S.Ct. 1517, 1523 (1997) (noting that

17

procedural default should "ordinarily" be considered before retroactivity)).  The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition.  *Id.* (*See* 28 U.S.C. § 2254(b), (c)).  Both rules have the purpose of allowing state courts the opportunity to address federal constitutional claims "in the first instance" before the claims are raised in federal habeas proceedings.  *Id.* (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2555 (1991)).

Under the procedural default rule, a federal court acting on a state prisoner's habeas petition will not review a question of federal law if the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is "independent of the federal question and is adequate to support the judgment."  *Id.* at 295 (*citing Coleman*, *supra*, 111 S.Ct. at 2553-2554).  The rule "has its historical and theoretical basis in the 'adequate and independent state ground' doctrine" that governs direct review of state court cases by the United States Supreme Court. *Id.* (*citing Harris v. Reed*, 109 S.Ct. 1038, 1041-1042 (1989) (*citing Wainwright v. Sykes*, 97 S.Ct. 2497, 2502, 2503, 2506 (1977)).  "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court."  *Id.* (*citing Coleman*, *supra*, 111 S.Ct. at 2555).

Generally, a claim may be procedurally defaulted in two ways.  *Id.* (*citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006).  First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of Section 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule.  *Id*. (*citing Williams*, 460 F.3d at 806).  Second, a claim is

procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.* (*citing Williams*, 460 F.3d at 806).

Under the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when the:

(1)  Petitioner fails to comply with a state procedural rule;

(2)  State courts enforce the rule;

(3)  State procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and

(4)  Petitioner cannot show cause and prejudice excusing the default.

*Id.* (*citing Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010) (en banc)).  The second prong of this test requires that the state courts "actually enforce[ ]" the state procedural rule in denying relief. *Id.* (*citing Stone v. Moore*, 644 F.3d 342, 346 (6th Cir.2011) (*quoting Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986)).  In other words, "it is not sufficient that the state court could have applied a procedural default under state law; it must actually have done so." *Id*. (*citing Skipper v. French*, 130 F.3d 603, 609 (4th Cir.1997) (*citing Caldwell v. Mississippi*, 105 S.Ct. 2633, 2638-2639 (1985)).

In determining whether a state court actually enforced a procedural rule, we apply the "plain statement" rule of *Michigan v. Long*, 103 S.Ct. 3469 (1983). *Id.* (*See Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989)).  Because a plain statement is required, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Id*. (*citing Harris*, 109 S.Ct. at 1043).

19

**C.**     **PETITIONER'S THIRD AND FOURTH CLAIMS ARE PROCEDURALLY DEFAULTED.**

Petitioner's third claim–appellate counsel was ineffective for failing to raise in the appeal that the trial court erred in imposing multiple gun specification deriving from the same act or transaction, in violation of the Fifth Amendment–has been procedurally defaulted for his failure to timely raise this issue in the state court of appeals.

Petitioner's fourth claim–trial court erred as a matter of law in sentencing Petitioner pursuant to Senate bill 2 as opposed to sentencing guidelines in the OHIO REVISED CODE prior to July 1, 1996–is procedurally defaulted, having never been presented to the state courts as a claim independent of the ineffective assistance of appellate counsel claim.

The Magistrate will discuss whether the claims are actually defaulted or whether the default can be excused.  To arrive at this conclusion, an analysis under the seminal Sixth Circuit case of *Maupin v. Smith*, 785 F. 2d 135 (6th Cir. 1986), follows.

1.     **THE LEGAL FRAMEWORK FOR REVIEW UNDER MAUPIN.**

In the Sixth Circuit, noncompliance with a state procedural rule may serve as a bar to habeas review.  *Scott v. Brunsman*, 695 F.Supp.2d 771, 779 (N.D.Ohio, 2010).  However, the reviewing court must undertake a four-part analysis set forth in *Maupin,* 785 F.2d at 139, to determine if federal habeas review is actually precluded by the petitioner's failure to observe a state procedural rule.  *Id*.

First, there must be a state procedural rule in place that the petitioner failed to follow.  *Id*. (*citing Smith v. State of Ohio Department of Rehabilitation and Corrections*, 463 F.3d 426, 431 (6th Cir. 2006) (*citing Maupin*, 785 F.2d at 138)).

Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default.  *Id*. (*citing Smith,* 463 F.3d at 501-502).

Third, the state procedural rule must be an "adequate and independent state ground to preclude habeas review."  *Id*.

### 2.  CAUSE AND PREJUDICE STANDARD.

In all cases in which a state prisoner has defaulted his or her federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause" for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 311 (2012) (*citing Coleman, supra*, 111 S.Ct. at 2565). The "cause" for default standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts.  *Id.* (*citing McCleskey v. Zant,* 111 S.Ct. 1454, 1469 (1991) (internal quotation marks omitted)).  Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available.  *Id*. (*citing McCleskey*, 111 S.Ct. at 1470).

The prejudice prong is an elusive concept but several guidelines can be discerned from the Supreme Court's pronouncements and the case law interpreting those pronouncements. *Maupin, supra*, 785 F.2d at 139.  First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet

21

state procedural guidelines.  *Id.* (*see United States v. Frady*, 102 S.Ct. 1584, 1594 (1982) (prejudice must result from the errors of which defendant complained)).  Second, the burden is on the petitioner to show that he or she was prejudiced by the alleged constitutional error.  *Id.* (*citing Frady*, 102 S.Ct. at 1595).  Moreover, the petitioner must show that there was actual prejudice not merely a possibility of prejudice.  *Id.* (*see also Engle v. Isaac*, 102 S.Ct. at 1572).  Third, in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim.  *Id.*  Thus, the examining court must determine whether the petitioner was prejudiced by his conviction based on allegedly insufficient evidence.  *Id.*

### 3. FUNDAMENTAL MISCARRIAGE OF JUSTICE STANDARD.

A fundamental miscarriage of justice results when one who is "actually" innocent is convicted.  *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) *cert. denied,* 132 S. Ct. 1909 (2012).  Actual innocence means factual innocence, not merely legal insufficiency.  *Luster v. United States,* 168 F.3d 913, 915 (6th Cir. 1999).  "Actual innocence" is an extremely narrow exception, and "claims of actual innocence are rarely successful."  *Gibbs*, 655 F. 3d at 477 (*citing Schlup v. Delo*, 115 S.Ct. 851, 864 (1995)).  Moreover, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id.* (*citing Herrera v. Collins*, 113 S.Ct. 853, 862 (1993)).

### D. THE MAUPIN FACTORS APPLIED TO PETITIONER'S THIRD AND FOURTH CLAIMS.

The first part of the *Maupin* test requires the Court to determine whether a state

procedural rule is applicable to petitioner's claim, and, if so, whether petitioner violated that rule. In Ohio, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967). Claims that do not appear on the face of the record are properly raised in a post-conviction action pursuant to OHIO REV. CODE § 2953.21. The accused must raise a colorable claim for ineffective assistance of counsel at the first opportunity to do so in order to avoid default. *See Monzo* v. *Edwards,* 281 F.3d 568, 576 (6th Cir. 2002).

Petitioner presented his third claim to the court of appeals in a motion to reopen under OHIO APP. R. 26(B). The appellate court denied the motion for the reasons that the (1) claim was untimely filed and (2) Petitioner failed to satisfy the procedural requirements of OHIO APP. R. 26(B). Petitioner did not present his fourth claim as an independent claim but rather as a claim for ineffective assistance of appellate counsel. When undertaking the seminal four-part *Maupin* analyses to ascertain whether Petitioner's failure to observe a state procedural rule actually precludes habeas review, the Magistrate finds that Petitioner's third and fourth claims were not properly filed through the requisite levels of state appellate review to the state's highest court and the avenue by which he may present his federal constitutional claims to the state's highest court is no longer open to him. Having violated the *res judicata* rule, Petitioner's third and fourth claims are not subject to habeas review. That being so, the Magistrate finds that the first prong of the *Maupin* test has been met.

In analyzing the second and third *Maupin* standards, it is well established in the Sixth Circuit that *res judicata* is an adequate and independent state ground sufficient to foreclose habeas review of constitutional errors. *Coleman v. Mitchell,* 268 F.3d 417, 429 (6th Cir. 2001)

23

*cert. denied,* 122 S.Ct. 1639 (2002). The Sixth Circuit has rejected claims that Ohio has failed to apply the doctrine of *res judicata* consistently. *Greer v. Mitchell,* 264 F.3d 663, 673 (6th Cir. 2001); *Monzo, supra*, 281 F.3d at 577.

The *res judicata* doctrine applies here because the issues raised in the third claim could have been litigated in a timely filed motion to reopen. The court of appeals relied upon this doctrine to deny Petitioner's claim. Petitioner's fourth claim could have been fully litigated on direct appeal. The appellate and Supreme Courts would have relied upon its own procedural rules to deny Petitioner leave to pursue this untimely filed, unexhausted issue on appeal. The Magistrate concludes that the state court could rely on *res judicata* to foreclose review of Petitioner's claims. Thus, the second and third prongs of the *Maupin* test have been met.

**E.    CAUSE AND PREJUDICE FACTORS.**

Notwithstanding Petitioner's assertions that he will be prejudiced by the Court's failure to grant the habeas relief requested, he has not overcome the procedural default by demonstrating cause for the default and actual prejudice. In fact, Petitioner has failed to come forward with any evidence of an external impediment, such as government interference and the reasonable unavailability of the factual basis for the claim, which prevented him from raising his claims on direct appeal. Since the "cause and prejudice" test is stated in the conjunctive, there is no need to address whether Petitioner will be prejudiced by the Court's decision to decline habeas review.

**F.    HAS A FUNDAMENTAL MISCARRIAGE OF JUSTICE RESULTED?**

Even though Petitioner has not shown "cause and prejudice," this Court has equitable discretion to correct a fundamental miscarriage of justice if Petitioner proffers specific facts

which support a finding that constitutional errors resulted in the incarceration of an actually innocent person.  Here, Petitioner alleged but failed to make a strong showing that he is the victim of fundamentally unjust incarceration, having alleged but failed to come forward with new, reliable evidence sufficient to cast doubt on the panel's verdict or meet the narrow exception reserved for and explicitly tied to actual innocence.  Failure to meet this miscarriage of justice exception precludes review of Petitioner's procedurally defaulted challenge to his third and fourth grounds for relief.  Petitioner is bound by his procedural default and he cannot obtain habeas review of these claims.

### VI. Habeas Standard of Review.

Petitioner has overcome the procedural barriers of time limitation, exhaustion and procedural default for his first, second and fifth claims.  Habeas review of these claims is made pursuant to the deferential standard of review mandated in the AEDPA, 28 U. S. C. § 2254(d), which provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Lovins v. Parker*, 712 F.3d 283, 293 (6th Cir. 2013) (*citing* 28 U.S.C. § 2254(d)).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the

merits." *Id*. (*citing Greene v. Fisher*, 132 S.Ct. 38, 44 (2011)).  A decision is "contrary to" clearly established federal law under § 2254(d)(1) if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Id.* at 293-294 (*citing Williams v. Taylor,* 120 S.Ct. 1495, 1523 (2000)).

A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 294  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity." *Id*. (*citing Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (*quoting Yarborough v. Alvarado*, 124 S.Ct. 2140, 2149 (2004)).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. (*citing Harrington*, 131 S.Ct. at 786) (*quoting Yarborough*, 124 S.Ct. at 2149).

**VII. DISCUSSION**.

Respondent does not challenge the contention that Petitioner's first, second and fifth grounds for relief are subject to habeas review on their merits.

The *first* ground for relief:

The trial court erred in considering not just the aggravating circumstances, but also evidence of the nature and the circumstances of the offense.

The *second* ground for relief:

The trial court's imposition of maximum and consecutive sentences fails to reflect

balancing of the seriousness and recidivism factors of OHIO REV. CODE § 2929.12 or the principles of felony sentencing.

The *fifth* ground for relief:

The trial court abused its discretion by failing to consider the sentencing factors required by OHIO REV. CODE § 2929.12.

**1.      GROUND ONE.**

During the penalty phase, the prosecutor appealed to the court to consider the autopsies, eyewitness accounts, statements of police investigators and photographs of the wounds when evaluating the nature and circumstances of the crimes.  *State v. Dickerson*, 2011 WL 3568277, at *3.  Arguing that the prosecutor impermissibly urged the court to rely on these non-statutory aggravating facts as a basis to impose the death penalty, Petitioner contends that the trial court erred in considering this evidence.

**a.      THE LEGAL FRAMEWORK.**

Recently, the Sixth Circuit Court of Appeals addressed whether error resulted when the prosecutor referenced non-statutory aggravating circumstances during the penalty phase of the trial.  *Moore v. Mitchell* 708 F.3d 760, 798 (6th Cir. 2013).  Apparently during Mr. Moore's trial, the prosecutor made several additional comments during the closing argument at mitigation that impermissibly urged the jury to rely on non-statutory aggravating factors as a basis to impose the death penalty.  *Id.*  In the habeas case, the district court held that any error caused by the prosecutor's reference to non-statutory aggravating circumstances such as the nature and circumstances of the offense, was cured by the state appellate courts' re-weighing of the

27

aggravating circumstances and mitigating factors.  *Id.*  The Ohio Supreme Court's mandatory re-weighing of the aggravating circumstances and mitigating factors under OHIO REV. CODE §§ 2929.03(D)(3) and 2929.05(A) rendered any error harmless.  *Id.*  Under OHIO REV. CODE § 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors.

    **b.**    **ANALYSIS OF PETITIONER'S FIRST CLAIM**.

The Magistrate concludes that the preserved error neither justifies habeas review nor entitles Petitioner to the relief requested for the reason that Petitioner failed to demonstrate that the admissibility of a non-statutory aggravating circumstance, even if contrary to state law, violated the Constitution or was otherwise inconsistent with clearly established federal law.

Even if Petitioner's claim is construed as a constitutional claim allegedly cognizable in federal habeas review, it would be precluded by well-established precedent of the United States Supreme Court which grants states wide freedom to structure and shape the parameters of consideration of the penalty phase.  *See Boyde v. California*, 110 S.Ct. 1190, 1195-1196 (1990). The sentencing court reasonably followed the dictates of Ohio state law in performing its penalty phase deliberations, considering the nature and circumstances of the offense as mitigating factors to be weighed against the aggravating circumstances and not as aggravating factors themselves. *See Dickerson, supra*, 2011 WL 3568277, at *3.  To the extent that the court considered non-statutory aggravating factors, it was not prejudicial as the state appellate court independently re-weighed the factors against the mitigating factors.  The prosecutor's reference to non-statutory aggravating circumstances was cured by the state appellate court's re-weighing of the

aggravating circumstances against the mitigating factors.

Petitioner's first claim lacks merit.  For these reasons, the Magistrate recommends that the Court dismiss this claim.

**2.    ANALYSIS OF GROUND TWO.**

Petitioner argues that the court's sentence of two life imprisonments with parole after 30 years failed to consider his chronic medical condition, likelihood of recidivism, or the peaceful adjustment to prison life during the past 27 years as relevant aspects of his character.  In other words, the sentence does not reflect that the sentencing court considered the factors of OHIO REV. CODE § 2929.12.

**a.    THE LEGAL FRAMEWORK.**

By way of background, prior to the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), Ohio's sentencing scheme required sentencing courts to consider certain factors, found primarily at OHIO REV. CODE § 2929.12, and to determine the impact of those factors on the seriousness of a defendant's crime and the defendant's likelihood of recidivism.  Unless the sentencing court found that the defendant's crime was particularly serious or that the defendant was especially likely to repeat his crime, the court was required to sentence the defendant to the minimum term in the sentencing range for that type of crime and if more than one crime had been committed, to concurrent rather than consecutive sentences.

Then the United States Supreme Court decided *Apprendi v. New Jersey*, 120 S. Ct. 2348, 2362-2363 (2000), and confirmed that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt. Thereafter the United States Supreme Court clarified the definition of "statutory maximum" in *Blakely v. Washington,* 124 S.Ct. 2531 (2003), finding that it was not the maximum sentence allowed by statute after the judge found additional facts but the maximum the judge could impose without additional factual findings. *Id.* Relying on principles in *Blakely,* the Supreme Court of Ohio determined in *Foster* that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing more than the minimum sentences. *Foster, supra*, 109 Ohio St. 3d 1, at ¶s 97 & 100.

        **b.**      APPLICATION OF THE LEGAL PRINCIPLES TO PETITIONER'S SECOND CLAIM.

Interestingly, the factors to consider in felony sentencing under OHIO REV. CODE § 2929.12, do not include the offender's chronic medical condition or the offender's peaceful adjustment to prison life as principles of sentencing. Accordingly, the sentencing court was not actually required to consider these conditions in their sentencing decision.

A review of the record reveals however, that the sentencing court in this case did consider the general guideline factors in Section 2929.12 when balancing the seriousness of the crimes and the likelihood of recidivism. *State v. Dickerson*, 2011 WL 3568277, at *6. In imposing maximum sentences, the panel found that Petitioner caused serious physical harm that resulted in death to the victims. The sentencing court appropriately exercised its full discretion to re-sentence Petitioner without fact finding or giving reasons for the sentence imposed.

Petitioner's second claim lacks merit. For these reasons, the Magistrate recommends that the Court dismiss Petitioner's second claim.

3.    GROUND FIVE.

Petitioner's fifth ground for relief is based on the presumption that the sentencing court abused its discretion when it failed to consider the sentencing factors required by OHIO REV. CODE § 2929.12.

a.    THE LEGAL FRAMEWORK.

There is a longstanding principle that federal habeas corpus relief is not applicable to errors of state law as they are not in the province of the federal habeas court to reexamine state court determinations on state-law questions.  *Schmidt v. Coleman,* 2012 WL 5878856, *11 (N.D.Ohio, 2012) (*citing Smith v. Ohio Department of Rehabilitation and Corrections,* 331F.Supp.2d 605, 622 (N.D.Ohio 2004)).  An abuse of discretion claim against the sentencing court involves the clear application of how it applied state law.  *Id.*

b.    APPLICATION TO PETITIONER'S CASE.

The Magistrate cannot entertain Petitioner's claim when the sentencing court expressly stated that it considered the sentencing factors of OHIO REV. CODE § 2929.12.  Furthermore, Petitioner's challenge to the sentencing court's application of its own statute does not constitute a violation of the Constitution or other federal law.  Therefore, this Court is foreclosed from conducting federal habeas review of this state claim.

31

### IX. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:        July 23, 2013

## X. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.